**Certiorari Granted, September 9, 2011, No. 33,143**

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2011-NMCA-091**

**Filing Date: July 5, 2011**

**Docket No. 30,461**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**LAUREN OWELICIO,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Gary K. King, Attorney General
Margaret E. McLean, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
Santa Fe, NM
Josephine H. Ford, Assistant Public Defender
Albuquerque, NM

for Appellant

## OPINION

**WECHSLER, Judge.**

**{1}** Defendant Lauren Owelicio appeals from a district court judgment affirming her conviction in metropolitan court for aggravated driving under the influence of intoxicating liquor or drugs (DWI), contrary to NMSA 1978, Section 66-8-102(D)(1) (2008) (amended

2010), after a bench trial. Defendant contends that her own uncorroborated extrajudicial statement admitting that she was driving was insufficient to support her conviction. We hold that evidence that someone was driving while intoxicated established the corpus delicti of the crime and that, regardless, there was evidence corroborating Defendant's admission that she was driving. Therefore, we hold that there was sufficient evidence to support Defendant's conviction. We affirm.

**BACKGROUND**

{2}      The pertinent facts are undisputed. Officer Wayne Harvey testified that around midnight on August 23, 2007, he responded to a reported accident. He arrived at a parking lot and found a dark-colored vehicle with a man outside, later identified as Aaron Atcitty, who appeared to be changing a flat tire. The vehicle had two flat front tires, and Atcitty was changing the one on the driver's side. Harvey testified that when he arrived, he remembered seeing a woman, later identified as Defendant, seated in the passenger seat, although the tape from the video recorder, which was admitted into evidence, showed the woman getting into the car on the passenger side as Harvey arrived. No one was sitting in the driver's seat.

{3}      Harvey testified that Atcitty emitted a strong odor of alcohol. He testified that Atcitty's speech was very slurred, and he could not initially understand what Atcitty was telling him. Atcitty denied driving the vehicle and claimed that an unnamed friend had been driving but ran away. Harvey testified that it was clear that Atcitty denied driving.

{4}      Harvey then spoke with Defendant. He noticed that she had bloodshot, watery eyes, and that she emitted a strong odor of alcohol. Harvey asked her to step out of the vehicle, which she did, albeit slowly. She was swaying back and forth and was unsure of her balance.

{5}      Harvey escorted Defendant to the patrol car and asked her who had been driving. She initially said nothing, then put her head down, let out a deep sigh, and said "I was driving the vehicle." Defendant told Harvey she was coming from Graham Central Station, a nightclub, where she had consumed three drinks, and she had a blowout while driving.

{6}      Harvey specifically asked Defendant if Atcitty was driving, and she said no. He accused Defendant of lying because she looked at Atcitty before responding, but Defendant again told him she was driving. Harvey testified that he gave Defendant several chances to consider what she was saying, and Defendant admitted to driving each time. He testified that he initially thought both Defendant and Atcitty were lying and Atcitty was driving until Defendant admitted to driving several times. Harvey believed Defendant had a "bout of good conscience" when she admitted to driving, and he testified that he gave her several chances to change her story to ensure that she was not trying to cover up for Atcitty.

{7}      After determining that Defendant was driving, Harvey administered field sobriety tests, and Defendant performed poorly. Harvey concluded that she was under the influence

of alcohol and arrested her for DWI. When Harvey escorted Defendant back to the vehicle, she went to the passenger side to retrieve her license. Harvey later administered a breath alcohol test at the police station, and the breath card admitted into evidence at trial showed Defendant had a breath score of .20/.19.

{8}     The tape from the video recorder was admitted into evidence and shows that as Defendant and Harvey approached the vehicle, Atcitty again insisted that his friend had been driving. Harvey told Atcitty to stop lying because Defendant had already admitted she was driving. When Defendant again claimed she was driving, Atcitty responded "No you weren't, dumb-ass[.]"

{9}     Atcitty's sister, Cynthia Qualo, testified that she, her husband, Atcitty, and Defendant were at Graham Central Station on the night in question. She testified that Defendant had "a lot" to drink while they were at Graham Central Station, while she herself had one drink. She also testified that she saw Atcitty in the driver's seat when Atcitty and Defendant drove away from Graham Central Station.

{10}     Qualo testified that Atcitty and Defendant were driving behind the car containing Qualo and her husband, but the cars became separated, and by the time Qualo found Atcitty and Defendant, they were standing outside the car surrounded by police officers. Qualo testified that she did not see the accident that caused the blowout and did not know what happened after the cars became separated.

{11}     At trial, Defendant testified that no one was with her and Atcitty in the vehicle, and she admitted she had previously told Harvey she was driving. However, she recanted her earlier statements, claiming she only said she was driving because she wanted to protect Atcitty and his job. She claimed Atcitty's job was more important than her job, and he might lose it if he was convicted of DWI. In response to Defendant's testimony, the metropolitan court judge told defense counsel that his client was a liar; she either lied to Harvey or was lying to the court and asked which testimony the court should believe.

{12}     No one other than Atcitty and Defendant was present during Harvey's interactions with them. Harvey could not remember where the keys were located but admitted Defendant did not have them and that the keys eventually went with Atcitty. Harvey testified that he did not know the identity of the registered owner of the car. We note that Defendant has attached a copy of the car's registration to her brief in chief, but we decline to consider this evidence because it was not before the trial court. *See State v. Cumpton*, 2000-NMCA-033, ¶ 20, 129 N.M. 47, 1 P.3d 429 ("Counsel should not refer to matters not of record in their briefs.").

{13}     The metropolitan court convicted Defendant of DWI, and the district court affirmed her conviction. On appeal, Defendant challenges the sufficiency of the evidence to support her conviction. Specifically, she claims there was insufficient evidence to prove she was driving the vehicle because the only evidence supporting that finding is her own

uncorroborated, extrajudicial admission.  We affirm.

## CORPUS DELICTI AND/OR TRUSTWORTHINESS RULE

**{14}**    In order to convict Defendant of aggravated DWI, the State had to prove beyond a reasonable doubt that:  (1) Defendant operated a motor vehicle; (2) within three hours of driving, she had an alcohol concentration of at least sixteen one-hundredths (.16) grams in two hundred ten liters of breath; and (3) her alcohol concentration resulted from alcohol consumed before or while she drove the vehicle.  *See* § 66-8-102(D)(1); UJI 14-4506 NMRA.  Defendant claims that she was entitled to a directed verdict because, other than her admission to driving, there was no other evidence that she drove or operated a motor vehicle.

**{15}**    Defendant's contention that her admission was untrustworthy is a challenge to the sufficiency of the evidence based on the corpus delicti or trustworthiness rule.  *Cf. United States v. Brown,* 617 F.3d 857, 860 (6th Cir. 2010) (recognizing that the trustworthiness/corroboration requirement goes to sufficiency, not admissibility).  The corpus delicti rule provides that commission of a crime cannot be proved *solely* through the admission of an extrajudicial confession.  *See State v. Paris*, 76 N.M. 291, 294, 414 P.2d 512, 514 (1966) (recognizing that "unless the corpus delicti of the offense charged has been otherwise established, a conviction cannot be sustained solely on [the] extrajudicial confessions or admissions of the accused").  In New Mexico, the traditional corpus delicti rule has been abandoned, and courts apply a modified version of the trustworthiness rule adopted in *Paris* and recently applied and interpreted in *State v. Weisser*, 2007-NMCA-015, ¶ 17, 141 N.M. 93, 150 P.3d 1043 (acknowledging that New Mexico has adopted the modified trustworthiness doctrine espoused in *State v. Lucas*, 152 A.2d 50, 61 (N.J. 1959)). Defendant claims that pursuant to the modified trustworthiness rule, there was insufficient proof to corroborate the trustworthiness of her admission that she was driving the vehicle. The State contends that the modified trustworthiness rule does not apply to Defendant's admission to driving because her identity as the driver is not part of the corpus delicti of the offense of DWI.

## STANDARD OF REVIEW

**{16}**    The pertinent facts are undisputed.  Therefore, we apply a de novo standard of review to determine as a matter of law whether the uncontested facts were sufficient to establish the corpus delicti of aggravated DWI pursuant to the modified trustworthiness doctrine adopted and applied in New Mexico.  *See Weisser*, 2007-NMCA-015, ¶ 7.

## CORPUS DELICTI OF DRIVING WHILE INTOXICATED

**{17}**    The corpus delicti of an offense requires proof that a crime was committed, through direct or circumstantial evidence showing that (1) a loss or harm occurred, and (2) someone's criminal agency caused the loss or harm.  *See id.* ¶ 10.  In *State v. Sosa*, 2000-NMSC-036, ¶ 20, 129 N.M. 767, 14 P.3d 32, our Supreme Court succinctly stated that "the

corpus delicti of an offense is established by proof that the crime was committed, and the identity of the perpetrator is not material." That statement was recently reaffirmed by our Supreme Court in *State v. Wilson*, 2011-NMSC-001, ¶ 16, 149 N.M. 273, 248 P.3d 315.

{18}     Pursuant to our Supreme Court's holdings in *Sosa* and *Wilson*, and in light of Defendant's concession that there was independent evidence that the crime of DWI was committed by someone, her admission to driving is unnecessary for purposes of establishing the corpus delicti of DWI because the "identity of the perpetrator is not material" to that determination. *Sosa*, 2000-NMSC-036, ¶ 20. We cannot and will not revisit our Supreme Court's holdings on this issue. *See State v. Duarte*, 2004-NMCA-117, ¶ 11, 136 N.M. 404, 98 P.3d 1054 (recognizing that this Court's ability to disregard Supreme Court precedent is limited to cases in which "the precise issue has not been already decided by our Supreme Court").

{19}     In response to the State's contention that Defendant's admission is not necessary to establish the corpus delicti, Defendant argues that this case is not about the corpus delicti rule, but instead is about the due process requirement of corroboration of an untrustworthy confession. She contends "there is nothing in the case law indicating that the New Mexico courts intended to limit application of the trustworthiness doctrine . . . to cases where the corpus delicti is at issue." She then argues that the modified trustworthiness doctrine should apply to any use of an extrajudicial confession, not just with regard to establishing the corpus delicti. We disagree.

{20}     The opinion in *Sosa* was issued long after the modified trustworthiness doctrine was adopted by our Supreme Court, and the opinion is consistent with that doctrine. *See Weisser*, 2007-NMCA-015, ¶¶ 23-24 (recognizing that the "Court in *Sosa* did not cite to *Paris* in its discussion of the corpus delicti of a homicide" but observing that the result in *Sosa* is consistent with that rule). As previously discussed, the Court in *Sosa* held that because there was independent evidence establishing that the crime of homicide occurred, it did not need to consider the trustworthiness of the defendant's confession because his identity as the perpetrator was "nonessential to the [s]tate's evidence concerning corpus [delicti]." *Sosa*, 2000-NMSC-036, ¶ 16. By rejecting the defendant's contention that his confession should not be used to establish his identity as the perpetrator of the crime, our Supreme Court clearly suggested that application of the modified trustworthiness doctrine is limited to cases in which the corpus delicti is at issue. *See id.* ¶¶ 15-20.

{21}     All remaining New Mexico cases applying the modified trustworthiness doctrine address the issue of whether the corpus delicti was established by addressing whether there was evidence, apart from the defendant's confession, that the crime actually occurred. *See, e.g.*, *Doe v. State*, 94 N.M. 548, 549, 613 P.2d 418, 419 (1980) (holding that the child's admission to shoplifting was insufficient because, outside of that admission, there was no evidence to establish that the crime of shoplifting had occurred). No case considers whether the admission or confession may be used to establish the identity of the perpetrator or whether an admission or confession must be corroborated for that purpose.

**{22}** For example, in *Weisser*, this Court ultimately determined that the corpus delicti of the crime of criminal sexual contact of a minor (CSCM) was not established because the state failed to present any independent evidence tending to establish the trustworthiness of the defendant's admission that he committed the crime. *See Weisser*, 2007-NMCA-015, ¶¶ 26-36 (holding that the child's ambiguous behavioral symptoms were insufficient to establish the requisite "independent proof of the loss or harm" because they did not establish that the abuse had occurred or that the child had been harmed, and further holding there was no evidence corroborating the defendant's admission that he committed the crime). Likewise, in *Wilson*, the Court engaged in a review of the evidence introduced in addition to the defendant's confession to show that the crime of homicide had taken place. *Wilson*, 2011-NMSC-001, ¶¶ 19-28 (concluding that the corpus delicti of homicide was well supported because the defendant's confession was sufficiently trustworthy, and there was independent evidence showing the child's death was caused by a criminal act). Neither *Wilson* nor *Weisser* considers, much less addresses, whether the trustworthiness doctrine applies to require corroboration of a defendant's admission for any purpose other than establishing the corpus delicti of the crime.

**{23}** Out-of-state cases cited by Defendant also apply the trustworthiness doctrine in considering whether there was independent evidence that a crime was committed. However, in those cases, the defendant's identity is essential to establishing the corpus delicti because, due to the nature of the crime charged, in the absence of evidence pertaining to identity, there would be no crime at all. *See, e.g.*, *Brown*, 617 F.3d at 862-63 (observing that it is only when a defendant confesses to a crime that cannot be committed without identifying the accused, such as felon-in-possession of a firearm, that "the corroborative evidence must implicate the accused," but even then, "the independent corroborating evidence need only show that the crime occurred" (internal quotation marks and citation omitted)).

**{24}** In *Smith v. United States*, 348 U.S. 147, 153-54 (1954), the United States Supreme Court considered whether the corpus delicti or "corroboration rule" applied to all crimes including the crime of tax evasion. The Court recognized that the crime of tax evasion has no "tangible injury which can be isolated as a corpus delicti." *Id.* at 154. As it could not "be shown that the crime has been committed without identifying the accused," the corroborative evidence had to "implicate the accused in order to show that a crime has been committed." *Id.* Likewise, in *Brown*, the defendant's conviction for being a felon-in-possession of a firearm was based in part on his admission that he had stolen a firearm from the victim. *Brown*, 617 F.3d at 859. On appeal, the court held that the defendant's confessions were sufficiently corroborated by evidence that the victim had filed a police report claiming that the gun and other items were stolen. *Id.* at 863. There did not need to be any independent evidence establishing that the defendant was the person who actually stole the handgun. *Id.*

**{25}** In this case, unlike *Wilson*, *Weisser*, *Smith*, and *Brown*, the crime of DWI could be, and was, established without identifying the driver. Therefore, the modified trustworthiness doctrine is not applicable because the corpus delicti of the crime of DWI was established by

independent evidence showing that someone drove while intoxicated. *See People v. Martinez*, 67 Cal. Rptr. 3d 670, 673-74 (Ct. App. 2007) (observing that "[t]he corpus delicti of the offense of driving under the influence consists of proof that the automobile was being driven by some person who was under the influence of alcohol," and distinguishing cases in which the corpus delicti could not be established because there was no evidence eliminating other sober persons as possible drivers).

**SUFFICIENT CORROBORATION OF TRUSTWORTHINESS**

**{26}** Even if we were to agree with Defendant that the modified trustworthiness doctrine applied and agreed with the metropolitan and district courts that there needed to be some evidence corroborating Defendant's admission that she was driving, we would nonetheless affirm. We would affirm because, contrary to Defendant's contentions, there was sufficient corroborating evidence to establish the trustworthiness of her statement that she was driving and independent proof to confirm that she committed the crime of aggravated DWI. *See Weisser*, 2007-NMCA-015, ¶ 17 (holding that under the modified trustworthiness doctrine, the state must produce "independent corroborative proof tending to establish that when the defendant confessed he was telling the truth, plus independent proof of the loss or injury" (emphasis, internal quotation marks, and citation omitted)).

**{27}** In determining the trustworthiness of Defendant's extrajudicial statement, we look not at the circumstances surrounding the statement, but instead at the actual content of the statement and evidence that corroborates the information contained in the statement. *See id.* ¶¶ 30-31. Defendant acknowledges that evidence was introduced showing that she and Atcitty were intoxicated and coming from a bar, Defendant was present in the car, someone was fixing the tire that she said had a blow out, she and Atcitty were the only people in the vicinity of the car, and Atcitty, the only other person present, strongly denied driving. There was also evidence that the vehicle was disabled in a way that indicated impaired driving. Furthermore, although Harvey testified he saw Defendant on the passenger side when he arrived, the video tape showed Defendant was just getting into the car on the passenger side as Harvey arrived. There was also independent evidence that Defendant had a breath alcohol level of over .16.

**{28}** This evidence constitutes "evidence establishing the trustworthiness of [Defendant's] confession" *id.* ¶ 17, because it corroborates Defendant's admission that she was driving to the extent required. *Cf. United States v. Lee*, 315 F. Supp. 2d 1038, 1045 (D. Ariz. 2003) (acknowledging that the evidence used to show that the crime occurred can also be used to establish the trustworthiness of the defendant's confession); *Wilson*, 2011-NMSC-001, ¶ 26 (considering evidence that corroborated the facts contained in the defendant's confession, including but not limited to, the testimony of the forensic pathologist who supervised the autopsy that the child's cause of death "was consistent with a blockage to his mouth and nose," which corroborated the defendant's admission that he had suffocated the child).

**{29}** We note that the metropolitan court found that Defendant's admission was

corroborated in part by the fact that she made the admission several times. We agree with Defendant and the district court that the metropolitan court erred in so finding. *See id.* ¶ 30 (stating that multiple extrajudicial statements are not sufficient to establish the trustworthiness of the statements). However, as recognized by the metropolitan court and the district court, there was significant other corroborating evidence.

**{30}** Defendant also suggests that her admission was not trustworthy because she was intoxicated at the time she made the statement, she was under pressure, and she later provided a motive for lying. As previously stated, we do not consider such circumstances that surround the making of Defendant's extrajudicial statement. *See Weisser,* 2007-NMCA-015, ¶¶ 30-31 (refusing to consider the fact that the defendant had Huntington's disease and the impact the defendant's disease had on his truthfulness).

**{31}** We acknowledge that other evidence indicated Defendant was not the driver. However, the mere fact that there was testimony or evidence calling the trustworthiness of Defendant's admission into question does not negate that there was also corroborating evidence. Furthermore, Defendant has failed to apprise us of any cases in which the existence of some evidence calling the truthfulness of the defendant's admission into question is enough to ban the use of the defendant's admission despite the fact that other evidence corroborated the admission or tended to establish its trustworthiness. Instead, the existence of contradictory evidence merely raises a credibility issue to be resolved by the factfinder. *See State v. Reddish,* 859 A.2d 1173, 1212 (N.J. 2004) (applying the modified trustworthiness doctrine and holding that once the court determines as a matter of law that the state's evidence is sufficient to generate a belief in the trustworthiness of the extrajudicial statement, any discrepancies or missing details do not undercut the truthfulness of the defendant's confession, but instead raise factual issues regarding the reliability of the confession to be resolved by the factfinder).

### SUFFICIENCY OF THE EVIDENCE

**{32}** Defendant also contends that there was insufficient evidence to establish that she operated the vehicle as required for a DWI conviction. In analyzing a sufficiency challenge on appeal, we view the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all inferences in favor of the verdict. *State v. Apodaca,* 118 N.M. 762, 765-66, 887 P.2d 756, 759-60 (1994). "We do not weigh the evidence or substitute our judgment for that of the factfinder." *State v. Akers,* 2010-NMCA-103, ¶ 32, 149 N.M. 53, 243 P.3d 757. Moreover, this Court cannot consider the merit of evidence that may have supported a different result. *Id.*

**{33}** Defendant does not dispute that she was intoxicated at the time of the accident or that someone drove the vehicle in an intoxicated state. As previously discussed, Defendant admitted that she was driving, that there was evidence placing her at the scene of the accident, that she and Atcitty were the only persons at the scene, that Atcitty vigorously denied driving, and that the videotape showed her approaching the passenger side. From this

8

evidence, the metropolitan court could reasonably conclude that Defendant was driving the vehicle in an intoxicated state. *See State v. Mailman*, 2010-NMSC-036, ¶¶ 24-28, 148 N.M. 702, 242 P.3d 269 (recognizing that the factfinder may infer that the accused drove while intoxicated based on circumstantial evidence that includes "the accused's own admissions, the location of the vehicle next to the highway, or any other similar evidence that tends to prove that the accused drove while intoxicated"); *cf. State v. Greyeyes*, 105 N.M. 549, 552, 734 P.2d 789, 792 (Ct. App. 1987) (upholding a conviction for DWI based on evidence that the defendant smelled of alcohol, failed field sobriety tests, and admitted to drinking and driving into a rail).

{34}   Although there was other evidence and testimony indicating that Defendant was not the driver, the factfinder is entitled to weigh these inconsistencies against Defendant's admission and the evidence suggesting she was driving. *See State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 (recognizing that it is for the district court acting in its role as factfinder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lay).  We will not disturb the factfinder's determinations on these matters. *See Akers*, 2010-NMCA-103, ¶ 32 ("We do not weigh the evidence or substitute our judgment for that of the factfinder."); *cf. State v. Sarracino*, 1998-NMSC-022, ¶ 24, 125 N.M. 511, 964 P.2d 72 (observing that "although contrary evidence is presented which may have supported a different verdict, the appellate court will not weigh the evidence or foreclose a finding of substantial evidence" (internal quotation marks and citation omitted)).

**CONCLUSION**

{35}   Based upon the foregoing, we affirm Defendant's conviction for aggravated DWI.

{36}   **IT IS SO ORDERED.**

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

**MICHAEL D. BUSTAMANTE, Judge**

**CYNTHIA A. FRY, Judge**

**Topic Index for *State v. Owelicio*, Docket No. 30,461**

**AE          APPEAL AND ERROR**

9

| | |
|---|---|
| AE-SR | Standard of Review |
| AE-SB | Substantial or Sufficient Evidence |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-DG | Driving While Intoxicated |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-CF | Confession |
| CA-CC | Corpus Deliciti Rule |